Belknap
No. 91-264

THE STATE OF NEW HAMPSHIRE

v.

CHRISTINE GREENE

April 23, 1993

*John P. Arnold*, attorney general (*Walter L. Maroney*, assistant attorney general, on the brief and orally), for the State.

*Michael K. Skibbie*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

BATCHELDER, J. The defendant was found guilty of the crime of misdemeanor simple assault after a jury trial (*O'Neil*, J.) in Superior Court. The complaint upon which the defendant was tried alleged that she "did knowingly cause unprivileged physical contact with another, to-wit, Sergeant Donald Irvin of the Laconia Police Department, in that, [she] did punch the said Sergeant Donald Irvin in the face with her fist and in the torso with her fist and did further kick him about the body." Her appeal is based on a claim of trial court error in instructing the jury that it need not unanimously find any one of the three acts of unprivileged physical contact alleged in the complaint. We reverse and remand.

The defendant's February 7, 1991, evening started innocently enough, when she and her forty-two-year-old mother, Lenore, were drinking beer and shooting pool at the Tilton American Legion Hall. It ended on a less auspicious note, however, when Christine was subdued by three Laconia police officers, handcuffed, and transported to the Belknap County Jail to be placed in protective custody pursuant to RSA 172-B:3 (1990). The intervening events give rise to the matter before us.

Christine and Lenore left the Legion Hall at approximately 11:00 p.m. and drove to Laconia. Christine stopped at a residence on Whipple Avenue where she wished to visit a friend. Lenore wished not to stop there, and an argument between the two women ensued while both were outside the automobile. During the course of the argument Lenore sustained an asthma attack, which caused her to either sit or lie down in the snow beside the street. Apparently a citizen upon observing this rather odd scene notified the police. Officer David McCormack responded and, upon asking the defendant if there was a problem requiring his assistance, was met with an avalanche of invective, expletives and plain talk in general, presumably calculated to indicate that his services were not required. Sergeant Irvin, who was the patrol supervisor on duty that evening, upon being advised by the dispatcher that Officer McCormack was responding to a disturbance, shortly thereafter arrived at the scene.

The sergeant was advised by Officer McCormack that the defendant had a poor attitude, and as the sergeant approached her, he detected an odor of alcohol. He asked her to perform field sobriety tests, which she attempted and failed. He then determined to take her into protective custody because of her impairment and reached for one of her hands. At this point there is evidence that the sergeant was punched in the nose and struck in the chest by the defendant's fist. In an effort to subdue the defendant, Sergeant Irvin and Officer McCormack brought her to the ground. According to Irvin:

"We were able to bring her down to the ground on the ice and snow and tried to—at that point my idea was to try to get her on her belly. People are usually able to control if they're laying on their stomach versus laying on their back. But she was able—I think because of the ice was able to flip around. She just wouldn't cooperate at all. She was kicking, flailing her arms."

At that point, the defendant kneed Irvin in the ribs. Another officer was summoned, and with his assistance, handcuffs were secured, and the defendant was transported to jail.

The jury, during deliberations, sent the following question to the court: "Can the knee in the ribs constitute part of the assault or is [it] the strike in the face?" In response to the question, the court reassembled the jury in the courtroom and, over the defendant's objection, instructed them in salient part as follows:

"So what you have to decide is whether or not there was unprivileged contact by Miss Greene upon Donald Irvin. That's the decision that you have to make. Now, you need not all agree as to all the contacts in the complaint—any one of them—*nor do all of you have to agree which one.* One of you can agree that there was one of them."

(Emphasis added.) After rereading the complaint to the jury describing the three points of physical contact alleged, the court continued: "So there's three contacts there, and as long as you all agree that one of those—you don't have to agree which one—that's sufficient. So, again, you must all agree that there was unprivileged contact by—to Donald Irvin by the defendant on that evening. All right."

 The New Hampshire Criminal Code requires jury unanimity with respect to the presence of the elements of offenses in criminal cases as charged. "No person may be convicted of an offense unless each element of such offense is proved beyond a reasonable doubt." RSA 625:10 (1986). Unanimity is guaranteed as a matter of constitutional law, as we have held that the legislature may not provide for juries "of a less number than twelve, nor to provide that a number of the petit jury, less than the whole number, can render a verdict." *Opinion of the Justices,* 41 N.H. 550, 552 (1860); *see Opinion of the Justices,* 121 N.H. 480, 483, 431 A.2d 135, 137 (1981).

The elements of the crime charged here are twofold: the culpable mental state of knowingly and the proscribed conduct of unprivileged physical contact. The State argues that the three separate

blows alleged in the complaint were the means of committing the crime, not an element. With respect to the distinction between elements, requiring jury unanimity, and the means toward bringing the elements about, our case law is sparse, but nevertheless instructive. In *State v. Thresher*, 122 N.H. 63, 70, 442 A.2d 578, 581 (1982), we held that an indictment alleging death caused by a beating "with hands, feet and a bottle" was sufficient, and, more importantly, that a jury instruction permitting a finding of guilt without specificity as to which means was the cause of death was also sufficient. *See State v. Ball*, 101 N.H. 62, 63–64, 132 A.2d 144, 145 (1957) ("means and specific facts by which the alleged accessory" aided in the crime need not be alleged); *State v. Twarog*, 97 N.H. 101, 102, 81 A.2d 855, 856 (1951) (in pre-Criminal Code assault case, court held that means are not elements); *see also Schad v. Arizona*, — U.S. —, —, —, 111 S. Ct. 2491, 2501, 2504 (1991) (no jury unanimity required for statutory alternatives of single crime of first degree murder, where state law treats them not as elements but as means of satisfying *mens rea* element).

Here, the element of unprivileged contact was alleged to be three separate blows. Had the complaint instead alleged that the defendant had caused bodily injury by striking the officer three times, the blows would have constituted means of causing the injury rather than elements themselves. *See Thresher*, 122 N.H. at 70, 442 A.2d at 581. In such a case, jury unanimity would be required only as to the element of injury, not as to which of several alleged blows occurred. *Cf. State v. Giwosky*, 109 Wis. 2d 446, 448 n.1, 451, 326 N.W.2d 232, 233 n.1, 237 (1982) (where battery statute proscribes causing bodily harm, not unprivileged contact itself, jury unanimity not required with respect to separate acts alleged). Jurors must be unanimous, however, about what constitutes the essential culpable act committed by the defendant and prohibited by the statute. Where discrete factual predicates can provide alternative bases for finding an element of the offense to have been established, a defendant is entitled to jury unanimity as to the factual predicate supporting a finding of guilt.

Illustrations of the element-means distinction in this case may be helpful. A conviction would have been proper if the jury had all agreed, for instance, that the defendant struck the officer in the face, but disagreed as to whether the blow occurred from a fist or knee. Also unassailable would have been a verdict of guilty based on agreement that a blow was struck to the officer's torso, despite disagreement as to the body part of the defendant that caused the blow. In

these examples, the element of *contact* would have been established through unanimous agreement, while the means—a punch or kick—need not have been agreed upon. As the jury was instructed here, however, unanimity as to the element of contact was not required. The defendant was entitled to just such unanimity. As Justice Linde of the Supreme Court of Oregon reasoned, rejecting the State's reliance on a foreign case:

> "The state quotes a passage to the effect that a rule requiring unanimous jury agreement on 'the manner in which the defendant participated in the crime' would 'permit the guilty defendant to escape accountability under the law because jurors could not unanimously choose beyond a reasonable doubt which of several alternate ways the defendant actually participated, even though all agree that he was, in fact, a participant.' The quotation is not persuasive. It seems questionable to characterize a person as 'the guilty defendant' who will 'escape accountability' when the issue for the jury is whether every element of the person's guilt has been proved. And 'accountability under the law' is provided when a person is prosecuted; if a jury does not convict, one would not refer to a 'guilty defendant' who 'escape[s] accountability.' Nor is the question whether a jury could 'choose' between different ways in which a defendant participated in the crime. It is not a matter of 'choosing' but of factfinding. If more than one way is charged and proved to the jury's unanimous satisfaction, the jury need not 'choose' and there is no difficulty. The problem arises precisely when none of the alternative ways has been proved to the satisfaction of all jurors, when one or more jurors is in doubt about each of the alternatives charged. We are not speaking here of factual details, such as whether a gun was a revolver or a pistol and whether it was held in the right or the left hand. We deal with facts that the law (or the indictment) has made essential to a crime."

*State v. Boots,* 308 Or. 371, 378–79, 780 P.2d 725, 729–30 (1989) (citation omitted).

■ Ordinarily, a general instruction to the jury on the requirement of a unanimous verdict is sufficient. *United States v. Ferris,* 719 F.2d 1405, 1407 (9th Cir. 1983). But "[t]here may be cases in which the nature of the evidence, questions from the jury, some variance between the proof and the indictment, or ambiguous supplementary

instructions from the court, may require the court to frame an instruction that substantial agreement is required on a specific set of facts." *Id.* The jury's question to the court during deliberations gave rise to the need for a specific instruction that the jury must be unanimous as to the factual predicate constituting the element of unprivileged physical contact. The trial court's instruction was to the contrary, permitting a finding of guilt without agreement on that factual predicate. Such an error can never be harmless. Accordingly, we reverse and remand.

*Reversed and remanded.*

All concurred.