Strafford
No. 98-492

THE STATE OF NEW HAMPSHIRE

v.

ROBERT FRANCOEUR

March 1, 2001

*Philip T. McLaughlin*, attorney general (*Janice K. Rundles*, senior assistant attorney general, on the brief and orally), for the State.

*Behzad Mirhashem*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

DALIANIS, J. After a jury trial in Superior Court (*Mohl*, J.), the defendant, Robert Francoeur, was convicted of first degree assault and second degree assault. *See* RSA 631:1 (1996); RSA 631:2 (1996). We reverse and remand.

The following facts were adduced at trial. On July 6, 1997, the Dover Fire and Rescue Department and the Dover Police Department responded to a call for medical aid at 557 Central Avenue. There they found the victim, Brenda Schock, with several lacerations on her left forearm. The defendant, Schock's boyfriend, was also at the apartment. Both had been drinking.

From the outset, the cause of the victim's injuries was a matter of dispute. The victim initially told Officer John Usher and the paramedics that she tripped over a bicycle in the back stairway. The defendant also told Officer Usher that the victim fell over a bicycle. After Officer Usher expressed disbelief as to this explanation, the defendant opined that she tripped over some boards in the stairway and may have cut herself on a nail in the wall. When Officer Usher examined the back stairway area, he did not find any blood consistent with the victim's injuries. Officer Usher did, however, see blood on a chair and on the floor of the living room, as well as broken glass.

At the emergency room, the victim offered several explanations about how she was injured. Some indicated that the wounds resulted from an accident, while others implicated the defendant as the cause. In particular, when asked by Nurse Constantine whether her boyfriend had done this to her, she nodded her head affirmatively and began to cry. At trial, the victim testified that she tripped over a bicycle, fell forward onto a coffee table, and landed on a glass.

The victim sustained three wounds to her forearm, each measuring approximately one and one-half inches in length and one-half inch in depth. According to Dr. Thomas Andrew, the State's expert, the wounds could not have been caused by either a fall onto glass as the victim described or from glass being thrown at her. Dr. Andrew stated that the wounds were caused by "three separate slashes" with a sharp-edged instrument.

The police executed a search warrant for the defendant's apartment. They recovered several pieces of broken glass from the living room floor, and although the police inspected some of the knives in the kitchen, none were seized.

The defendant was charged in a single indictment with three counts of first degree assault. Count I alleged that he "did purposely cause serious bodily injury to Brenda Schock by cutting her arm with a sharp bladed object." Count II alleged that he "did knowingly cause bodily injury to another by means of a deadly weapon; in that, [he] did knowingly cause bodily injury to Brenda Schock by cutting her arm with a shard or shards of glass." Count III alleged that he "did knowingly cause bodily injury to another by means of a deadly

weapon; in that, [he] did knowingly cause bodily injury to Brenda Schock by cutting her arm with a sharp bladed object." The jury found the defendant guilty of the lesser included offense of second degree assault on count I and of first degree assault on combined counts II and III.

On appeal, the defendant argues that the trial court erred in: (1) admitting as substantive evidence the victim's out-of- court assertion to Nurse Constantine that the defendant caused her injuries; and (2) not requiring jury unanimity as to which weapon, a shard or shards of glass or a sharp-bladed object, caused the injuries. We address each argument in turn.

## I. Hearsay Statement

The court allowed the State to introduce as substantive evidence Nurse Constantine's testimony that when she asked the victim whether her boyfriend had done this to her, the victim nodded affirmatively and began to cry. At trial, the State argued that this assertion was admissible under a number of exceptions to the hearsay rule including state of mind, see N.H. R. EV. 803(3), excited utterance, see N.H. R. EV. 803(2), and statement made for purposes of medical diagnosis and treatment, see N.H. R. EV. 803(4). The court ruled that it did not qualify under the state of mind exception, but that it was admissible as an excited utterance. Although not argued by the State, the court further opined that it also qualified under the residual exception to the hearsay rule. See N.H. R. EV. 803(24). The court observed that, based upon the questions asked at that point, the State had not yet laid a sufficient foundation to qualify the assertion as a statement made for the purposes of obtaining medical treatment.

Later in the trial, during the testimony of Dr. Owen MacCausland, the victim's treating physician at the emergency room, defense counsel cross-examined Dr. MacCausland about a statement in the emergency room record that the patient "denies assault but making vague innuendos consistent [with] assault." Arguing that defense counsel's questioning of Dr. MacCausland implied that Nurse Constantine's trial testimony was inconsistent with her medical record notes, the State then moved to introduce the whole record, including the note by Nurse Constantine, which stated, "when questioned if boyfriend did this — nods her head yes and begins to cry," as a prior consistent statement of Nurse Constantine. Noting that defense counsel had laid the foundation for the record, the court admitted it under the business records exception to the hearsay rule. See N.H. R. EV. 803(6).

On appeal, the defendant argues that the victim's assertion to Nurse Constantine was inadmissible hearsay. The State contends that it satisfies both the medical diagnosis and treatment exception, *see* N.H. R. Ev. 803(4), and the residual exception, *see* N.H. R. Ev. 803(24), to the hearsay rule. On appeal, however, the State does not argue that it was properly admitted as an excited utterance. Further, the State asserts that the court properly admitted the emergency room record because the defendant opened the door by using the medical record on cross-examination.

"Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted in the statement." *Simpkins v. Snow*, 139 N.H. 735, 737 (1995) (quotation omitted). Such statements are inadmissible unless they fall within one of the exceptions to the hearsay rule. *See id.* "We will not reverse a trial court's ruling on the admissibility of evidence absent an abuse of discretion. To show an abuse of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *State v. Young*, 144 N.H. 477, 482 (1999) (citations and quotation omitted).

■ Although not ruled upon by the trial court, the State contends that the victim's assertion satisfies the medical diagnosis or treatment exception to the hearsay rule. While we will uphold a trial court's admission of evidence on erroneous grounds if alternative grounds for admission exist, *see State v. Scovill*, 144 N.H. 409, 410-11 (1999), whether the victim's assertion meets the medical diagnosis and treatment exception to the rule against hearsay requires factual findings, which we cannot make in the first instance. *See Dunn v. CLD Paving*, 140 N.H. 120, 123 (1995) ("We do not find facts in the first instance . . . ."). Further, because the trial court admitted the assertion under other exceptions to the hearsay rule, the defendant had no opportunity to present evidence to demonstrate that the assertion did not meet the medical diagnosis and treatment exception.

■ Although not argued by the State below, the trial court further found that the assertion was admissible under the residual exception to the hearsay rule.

> Hearsay may be admitted under the residual exception, if it is a statement not specifically covered by any of the foregoing exceptions in Rule 803, but having equivalent circumstantial guarantees of trustworthiness. To be admissible, the statement must also be offered as evidence of a

material fact; be more probative on the point for which it is offered than any other evidence which the proponent may procure through reasonable efforts; and the general purposes of these rules and the interests of justice must best be served by admission of the statement in question.

*State v. Johnson*, 145 N.H. 647, 648 (2000) (quotations, citation, brackets and ellipses omitted). The trial court noted that the "specific criteria of 803(24) are met" and that based "on the evidence that has been presented so far in this case, that statement is — that her nod under those circumstances would be reliable, that is, her response would be reliable." We disagree. Even assuming that the trial court could *sua sponte* invoke Rule 803(24), our review on the merits nonetheless reveals insufficient circumstantial guarantees of trustworthiness to support admission under Rule 803(24). We note that the trial court did not find that her assertion was made for the purpose of obtaining a medical diagnosis or treatment, and therefore we express no opinion as to whether the statement was made under sufficient circumstances indicating its trustworthiness to support admission under Rule 803(4).

■ The defendant further contends that the trial court erred in admitting the victim's entire emergency room record pursuant to the business records exception to the hearsay rule, *see* N.H. R. EV. 803(6). He argues that the record contains inadmissible hearsay, to wit, Nurse Constantine's note regarding the victim's assertion. "[I]n order for a hearsay declaration which itself contains a hearsay statement, to be admissible to prove the truth of the included statement, both the statement and the included statement must meet the tests of an exception to the hearsay rule." *State v. Winders*, 127 N.H. 471, 477 (1985) (quotation omitted). Thus, because the victim's nod was not properly admitted under an exception to the hearsay rule, the portion of the emergency room record containing Nurse Constantine's observation of the victim's nod was inadmissible.

The State argues that the defendant opened the door to admission when cross-examining Dr. MacCausland about a nurse's note within the record that the patient "denies assault but making vague innuendos consistent [with] assault." We disagree. Without the initial erroneous admission of Nurse Constantine's statement, admission of this record would not have been an issue. Therefore, we need not address the State's argument that the defendant opened the door to the admission of this statement.

■ Finally, the State argues that even if the court erred in admitting the victim's assertion, the defendant suffered no prejudice and, therefore, the error was harmless. The State contends that her assertion was cumulative of other similar evidence. We disagree. A review of the record indicates that the victim's assertion was the only direct evidence that the defendant had assaulted her. We note that there was strong circumstantial evidence implicating the defendant, but apart from her assertion to Nurse Constantine, there was no other direct evidence admitted substantively that implicated the defendant. Thus, we cannot find beyond a reasonable doubt that this error was harmless.

*II. Jury Unanimity*

Although we reverse the defendant's conviction, we will address the defendant's second argument regarding jury unanimity because it is likely to be an issue in the event of a new trial.

Over defense counsel's objection, the trial court instructed the jury that

> [a]s to Counts Two and Three, you should consider these counts together, and I will take one verdict on Counts Two and Three. . . . Here, the State must prove beyond a reasonable doubt that the defendant cut the left forearm of Brenda Schock, that he did so knowingly or purposely, with a shard [or] shards of glass or a sharp-bladed object which in the manner used constituted a deadly weapon, and that as a result, Brenda Schock suffered bodily injury. . . . Counts Two and Three are identical except as to the object alleged to be used to commit the offense. If you find beyond a reasonable doubt that the defendant committed all of the elements of the offense alleged in Counts Two and Three, and you are unanimous as to such findings, and you also find beyond a reasonable doubt and unanimously agree that the object used to commit the offense was a shard or shards of glass or a sharp-bladed object, you should find the defendant guilty of the offense alleged in Counts Two and Three.

The defendant contends that this instruction violated his right to jury unanimity under Part I, Article 15 of the State Constitution. He asserts that under *State v. Greene*, 137 N.H. 126 (1993), "shard or shards of glass" and "sharp-bladed object" are discrete factual predicates that provide alternative bases for establishing the element of deadly weapon, and that therefore all jurors must agree on which object was used. We disagree.

The defendant bases his argument solely upon the State Constitution. We, therefore, so limit our analysis. In *Greene*, the complaint alleged that the defendant "did knowingly cause unprivileged physical contact with another . . . in that she did punch the [victim] in the face with her fist and in the torso with her fist and did further kick him about the body." *Id.* at 127 (quotation and brackets omitted). During deliberations, the jury asked the court: "Can the knee in the ribs constitute part of the assault or is it the strike in the face?" *Id.* at 128 (quotation and brackets omitted). The trial court instructed the jury that they only needed to agree that one of the three contacts alleged in the complaint occurred; they need not all agree on any one particular contact. *See id.* We held that this instruction violated the defendant's right to jury unanimity. *See id.* at 131. Specifically, we stated that "[j]urors must be unanimous . . . about what constitutes the essential culpable act committed by the defendant and prohibited by the statute. Where discrete factual predicates can provide alternative bases for finding an element of the offense to have been established, a defendant is entitled to jury unanimity as to the factual predicate supporting a finding of guilt." *Id.* at 129. We further stated that "[a] conviction would have been proper if the jury had all agreed, for instance, that the defendant struck the officer in the face, but disagreed as to whether the blow occurred from a fist or knee. Also unassailable would have been a verdict of guilty based on agreement that a blow was struck to the officer's torso, despite disagreement as to the body part of the defendant that caused the blow." *Id.* Thus, the "discrete factual predicates" to which we referred in *Greene* concern the establishment of an element of the crime and not the means of carrying out that element. *See id.*

 Here, the trial court's instructions required the jury to be unanimous on the essential elements of first degree assault, and thus did not violate the defendant's right to a unanimous jury verdict. Specifically, the instructions, tracking the language of the indictments, required the jury to unanimously find that the defendant knowingly or purposely caused bodily injury to the victim with a deadly weapon. *See* RSA 631:1, I(b) (1996); *see also* RSA 625:11, III(a), (b) (1996). Additionally, the defendant, both below and on appeal, agreed that both a shard or shards of glass and a sharp-bladed object were deadly weapons, and that a shard of glass was a sharp-bladed object.

Although we find no error with the jury instructions, we note that the trial court was put in a difficult position because of the State's

form of indictment. The State could have avoided this issue with more artfully drafted counts.

The defendant raised other issues in his notice of appeal, but did not brief them. Therefore, they are deemed waived. *See State v. Mountjoy*, 142 N.H. 648, 652 (1998).

*Reversed and remanded.*

THAYER, J., sat at oral argument but resigned prior to the final vote; HORTON, J., sat at oral argument but retired prior to the final vote; BROCK, C.J., and BRODERICK, J., concurred; DALIANIS, J., took part in the final vote by consent of the parties.