Rockingham
No. 2003-470

THE STATE OF NEW HAMPSHIRE

v.

JOHN FLYNN

Argued: July 15, 2004
Opinion Issued: September 1, 2004

*Kelly A. Ayotte*, attorney general (*Jeffrey S. Cahill*, senior assistant attorney general, on the brief and orally), for the State.

*Nixon Peabody LLP*, of Manchester (*David A. Vicinanzo* and *Courtney Worcester* on the brief, and *Mr. Vicinanzo* orally), for the defendant.

DALIANIS, J. The defendant, John Flynn, was convicted by a jury of two counts of aggravated felonious sexual assault, *see* RSA 632-A:2, I(i) (1996) (amended 2003). The defendant argues that the Trial Court (*McHugh*, J.) erred by: (1) not dismissing the indictments due to insufficient evidence; (2) not granting his motion to dismiss two indictments because they were

multiplicitous; (3) not granting his motion to dismiss an indictment because it was not the result of a unanimous grand jury; (4) limiting his right to cross-examine the victim; and (5) not granting his motion for a new trial based upon ineffective assistance of counsel. We affirm.

The record reflects the following facts. In the late evening of April 11, 2002, the defendant, who had been drinking that night at a friend's house, went to the victim's home because he feared being stopped by the police if he continued to drive. The defendant was a friend of the victim's husband and knew the victim through this association. The defendant had been at the victim's home on occasions prior to that evening. The defendant drank one or two beers that he had brought with him and at some point, while her husband was in another room, asked the victim if she would perform oral sex on him. The victim declined, and soon thereafter, left the room to find her husband to get ready for bed. The victim and her husband decided to let the defendant stay so he would not have to risk driving while intoxicated.

The victim and her husband slept on an air mattress, covered with a sheet, positioned in the center of their living room. Adjacent to the mattress was a couch, on which the defendant was resting. The husband slept on the side of the mattress next to the couch, while the victim slept on the opposite side. The victim slept in a t-shirt under several layers of blankets. Prior to the defendant's arrival the victim had taken fifty milligrams of Trazodone, an anti-depressant, which she used to help her fall asleep. After talking with the defendant for a while, the victim and her husband fell asleep.

At approximately 4:00 a.m. the victim awoke because of an uncomfortable feeling in her genital area and found the defendant's head between her knees. She was on her back with her knees tilted sideways, separated by the defendant's right hand. She observed that the defendant's mouth and chin were wet, and that the defendant was dressed only in a shirt and boxer shorts. She also observed a wet spot on the defendant's boxer shorts. The defendant told the victim to stay quiet and not wake up her husband; however, the victim screamed and tried to wake up her husband, who had apparently slept through the entire incident.

After waking her husband, the victim discovered that she had a "large amount of fluid" on her vaginal area and demanded to know from the defendant what it was. The defendant claimed that he did not know, and that he must have drooled. The victim and her husband told the defendant to leave their home and then contemplated calling the police. However, because they had allowed the defendant, who was eighteen, to drink beer in their home, they feared calling the police; instead, they decided to preserve the evidence from the defendant's sexual assault themselves. The

victim took toilet tissue paper and a Q-Tip and wiped up the bodily fluid that she had discovered on the outside of her vaginal area. She placed both in a plastic bag, which her husband then placed in the refrigerator or freezer. The victim then showered. Later, her husband observed a spot on the couch where the victim sat shortly after the assault and wiped it with a wet Q-Tip. He also observed a stain on the sheet covering the air mattress, and he cut that section out. At around 11:00 a.m., both the victim and her husband decided that they should report the attack, so they went to the police station. They brought the evidence with them and described the incident to a detective. After they were interviewed, the victim underwent a sexual assault examination. Tests on a vaginal swab taken of the inside of the victim's vagina during the examination revealed the presence of one of the defendant's sperm.

The police learned that the defendant was attempting to contact the victim, and they arranged for the victim to telephone the defendant and tape-record the conversation without his knowledge. During the conversation the defendant claimed to have little recollection of the prior evening and repeatedly apologized for anything he may have done. The defendant also stated, "To come right out and be blunt, just to save us all a bunch of bulls---, to be honest, I think if I would have done anything it probably wouldn't be much more than like, I don't know, probably like a finger, you know what I mean?"

The defendant was indicted on three counts of aggravated felonious sexual assault. The indictments alleged that he committed sexual penetration, by surprise: (1) by intercourse; (2) using his penis, finger or manipulating any object to cause an intrusion, however slight, into the genital opening of the victim's body; and (3) through cunnilingus. The defendant was acquitted of engaging in sexual penetration by sexual intercourse, but convicted of the other two charges. As to the second count, the trial court polled the jury. All twelve jurors stated that they believed the defendant committed digital penetration.

As noted, the defendant argues on appeal that: (1) the evidence was insufficient to support a finding that either cunnilingus or digital penetration occurred; (2) the court should have granted his motion to dismiss the indictments for sexual penetration by sexual intercourse and sexual penetration by using his penis, finger, or manipulating any object because they are multiplicitous of each other; (3) the trial court should have granted his motion to dismiss the indictment alleging sexual penetration by using his penis, finger or manipulating any object because the indictment violated his right to be tried only on a charge returned by at least twelve members of a grand jury; (4) the trial court erred in

limiting his cross-examination of the victim; and (5) he is entitled to have his conviction vacated due to ineffective assistance of counsel.

We first address the defendant's argument that the trial court erred in refusing to dismiss the indictments because the evidence was insufficient for the jury to have found him guilty of either cunnilingus or digital penetration. In an appeal challenging the sufficiency of the evidence, the defendant carries the burden of proving that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Mason*, 150 N.H. 53, 56 (2003). In reviewing the sufficiency of the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation. *Id.* It is well settled that the jury has substantial latitude in determining the credibility of witnesses. *Id.* In determining witness credibility, the jury may accept some parts and reject other parts of testimony, and adopt one or another inconsistent statements by witnesses. *Id.*

The defendant in this case was convicted of two counts of aggravated felonious sexual assault by surprise. *See* RSA 632-A:2, I(i). RSA 632-A:2, I(i) provides that:

> A person is guilty of the felony of aggravated felonious sexual assault if he engages in sexual penetration with another person under any of the following circumstances:
>
> . . . .
>
> (i) When the actor . . . by the element of surprise is able to cause sexual penetration with the victim before the victim has an adequate chance to flee or resist.

We will examine the defendant's convictions for cunnilingus and digital penetration in turn. "Sexual penetration" is defined to include "[c]unnilingus." RSA 632-A:1, V(b) (1996). "Cunnilingus is commonly understood to mean stimulation of the vulva or clitoris with the lips or tongue." *Mason*, 150 N.H. at 57 (quotation omitted). The defendant argues that the conviction for sexual penetration by cunnilingus must be reversed because the State failed to prove that "actual contact . . . between the defendant's lips or tongue and the [victim's] vagina [occurred]." *See State v. Zeta Chi Fraternity*, 142 N.H. 16, 23-24 (1997) (ample evidence for the jury to find that cunnilingus occurred when multiple witnesses testified to observations of direct physical contact between guests' faces and a dancer's genital area). We disagree.

While there was no direct testimony that anyone observed the defendant contact the victim's vagina with his lips or tongue, the State did present circumstantial evidence of that contact. Because the evidence in this case

was circumstantial, it must exclude all rational conclusions except guilt in order to be sufficient to convict. *State v. Smith*, 127 N.H. 433, 436 (1985). The proper analysis is not whether every possible conclusion has been excluded, but rather whether other *rational* conclusions based upon the evidence have been excluded. *State v. Cobb*, 143 N.H. 638, 658 (1999).

Here, the victim testified to awakening to find the defendant's head between her knees, and that his mouth and chin were wet. She also testified that her vagina was wet, and that there was a large amount of fluid on her. Additionally, a serologist testified that the tissue used to wipe the fluid from her genital area tested positive for saliva and the defendant's semen, as did at least one of the Q-Tips and the sheet. The wetness around the defendant's mouth and chin and the saliva in the victim's vaginal area support a finding that the defendant's mouth made contact with the victim's vagina. Finally, the victim's genital area was wet with the defendant's semen, demonstrating that the entire incident had occurred while the defendant was in a state of sexual arousal.

The defendant argues that the saliva on the bed sheet and victim could have been from the victim herself. While the serology expert was unable to rule out the victim as a possible source of the saliva, the defendant has not proffered any rational explanation as to how the victim's saliva could have been transferred to her genital area while she was sleeping. Instead, given that the defendant's mouth and chin were wet, the only rational conclusion to be drawn is that the saliva on the victim's genital area came from the defendant himself.

 Therefore, although there was no direct testimony that the defendant's lips or tongue came into contact with the victim's genital area, the circumstantial evidence provides ample ground for concluding that the defendant's mouth came into contact with the victim's genital area and excludes all rational conclusions, except guilt.

We now examine the defendant's conviction for digital penetration. "Sexual penetration" is defined to include "[a]ny intrusion, however slight, of any part of the actor's body . . . into genital or anal openings of the victim's body." RSA 632-A:1, V(e) (1996). Furthermore, "[g]enital openings" "means the internal or external genitalia including, but not limited to, the vagina, labia majora, labia minora, vulva, urethra or perineum." RSA 632-A:1, I-b (1996). The defendant argues that the conviction for digital penetration must be reversed because the State failed to demonstrate that "some penetration actually occurred." We disagree.

In *State v. Fennell*, 133 N.H. 402 (1990), we determined that testimony from a child victim that the defendant "put his finger in my—trying to find my hole," and that when he found it "he goes around it," formed an

insufficient basis to determine that the defendant digitally penetrated the victim. *Fennel*, 133 N.H. at 408-09. Similarly, in *State v. Chamberlain*, we determined that a child victim's explanation that the defendant rubbed lotion on the sides of the opening of her vagina to allegedly help heal a rash, but not in the opening, was insufficient to sustain his conviction for digital penetration. *State v. Chamberlain*, 137 N.H. 414, 416-17 (1993). We stated, "The child victim not only failed to testify that the defendant had penetrated her, she explicitly stated that the defendant did not put his finger in her opening." *Id.* at 417. We concluded, "Even if the child's representation could be interpreted so broadly as to imply that the defendant touched the internal sides of her genital opening, this mere implication, in light of the child's entire testimony, does not permit a rational finding of guilt beyond a reasonable doubt." *Id.*

We first note that both *Fennell* and *Chamberlain* interpreted former RSA 632-A:1 (1986), which was prior to the enactment of a definition of "genital opening" that now specifically includes external genitalia. We need not decide, in this case, whether the current definition of "genital opening" would allow conviction for the touching of the external sides of or area around the genital opening because we find that the evidence presented established that the touching went beyond that indicated in either *Fennell* or *Chamberlain*.

The victim in the present case described the sensation she felt as "comparing other times that I've been intimate with my husband and it not being comfortable, his fingers are what I can compare it with. So on that night I believe it was [the defendant's] fingers that hurt." She gave conflicting testimony as to where the pain originated, at one point describing it as occurring "in [her] vagina," but during cross-examination "like a scratch on the outside of [her] vagina."

Evidence was presented that, during the taped phone call, the defendant stated, "I think if I would have done anything it probably wouldn't be much more than like, I don't know, probably like a finger." The defendant's description of events corroborated the victim's direct testimony that she felt his finger upon her. Finally, the sensation the victim felt would have occurred close to the time the defendant had ejaculated, and a single sperm, belonging to the defendant, was found inside the victim's vagina.

We conclude that, unlike the victims' specific testimony in *Chamberlain* and *Fennell*, the victim's testimony in this case did not negate the possibility that the defendant touched the internal sides of her vaginal opening, as one can touch the internal sides of the vaginal opening, while, at the same time, still touch the outside or outer portion of the

vagina. Furthermore, the State's case is supported by not only the victim's sensation, but also the sexual arousal of the defendant, his verbal description of events, and the sperm found inside the victim's vagina. One can rationally conclude, through examination of all the facts and circumstances of this case, that the defendant used his finger to intrude, however slightly, into the "internal sides" of the victim's vagina. Therefore, we find that a rational jury could have concluded beyond a reasonable doubt that the defendant used his finger to sexually penetrate the victim.

The defendant's next issue on appeal is that the "the trial court erred in refusing to dismiss the multiplicitous indictments" in violation of his rights under the State and Federal Constitutions. N.H. CONST. pt. I, art. 16; U.S. CONST. amends. V, VI, XIV. We first address the defendant's claim under the State Constitution and cite federal authority for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

Part I, Article 16 of the New Hampshire Constitution protects an accused against multiple prosecutions and multiple punishments for the same offense. *State v. Currier*, 148 N.H. 203, 206 (2002). The State may, however, simultaneously prosecute multiple charges that constitute the same offense based upon a single act or transaction, provided that it seeks a single conviction and each charge alleges a distinct, alternative method of committing the offense. *Id.* The rule rests upon the practical recognition that before trial the evidence may not be completely known, and when introduced may support alternative interpretations and inferences. *See State v. Allison*, 126 N.H. 111, 113 (1985). The trial court may require the State to elect between alternative charges or, if the State refuses, may quash some of the charges, when trial upon multiple counts or indictments would prejudice either the defendant's ability to prepare to meet the charges or the jury's ability to deal with them intelligently and dispassionately. *State v. Nickles*, 144 N.H. 673, 676 (2000).

The defendant contends that the indictment alleging sexual intercourse and the indictment alleging sexual penetration by the penis, finger, or the manipulation of any object were multiplicitous because they both potentially described the same act, *i.e.*, sexual penetration by the use of the penis. The State argues, however, that "[i]n making its charging decision, [it] wanted to account for the possibility that the jury might be unanimous that penetration occurred by at least the penis or finger[,] but be divided on which body part was used." The State contends that, "in that event, if [it] had charged the defendant separately with using his penis and finger, the defendant would have been acquitted of both charges despite jury unanimity that the required element of penetration occurred." Thus,

the State contends that it drafted its indictment to incorporate penile and digital penetration as alternative means of committing the same act.

The defendant's contention rests upon the possibility that the jury may have found the defendant guilty of both sexual penetration by sexual intercourse and sexual penetration by the insertion of the penis, thus creating a potential that the defendant could be punished twice for one offense. We reject the defendant's argument because the jury did not convict the defendant of the crime of sexual assault by sexual intercourse, and thus the defendant has not been punished twice for the same offense. As the State points out, "the defendant is not entitled to the remedy he seeks because the alleged double jeopardy violation has already been resolved in his favor at trial."

The defendant argues, however, that by pursuing two charges for potentially the same act, the State may have left the jury in a situation in which it would reach a "compromise verdict" by assuming that, with two charges pending, the defendant must have been guilty of at least one. The defendant further argues that "by allowing both of the indictments to be presented to the jury, the jury could have been operating under the mistaken impression that the [d]efendant committed two acts of sexual penetration." We find these arguments unavailing because the jury, upon being polled, unanimously stated that the defendant was guilty of digital penetration. Furthermore, the evidence pointed toward digital penetration. Thus, given that no juror found the defendant guilty as the result of penile penetration, the potential effect of a possible overlap between the two indictments did not manifest itself in the jury's verdict.

As the Federal Constitution offers the defendant no greater protection than does our State Constitution under these circumstances, *see Currier*, 148 N.H. at 206; *Blockburger v. United States*, 284 U.S. 299, 304 (1932), we reach the same result under the Federal Constitution as we do under the State Constitution.

The defendant next argues that the indictment violates his right to be tried only on charges returned by a grand jury under Part I, Article 15 of the New Hampshire Constitution. The defendant argues that because the indictment alleged sexual penetration through the use of his penis, finger or by the manipulation of any object, it is "impossible to tell whether the [d]efendant was actually convicted on the charges returned by the grand jury." It is a doctrine of English and American common law that every indictment must be found by a grand jury "composed of not less than twelve, nor more than twenty three ... and the *concurrence* of twelve, at least, of the panel, is necessary to the finding of an indictment." *State v. Symonds*, 36 Me. 130, 130 (1853) (emphasis added); 1 R. McNamara, New

HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 20.04, at 439 (2003); *see State v. Gerry*, 68 N.H. 495, 497-98 (1896); *State v. Albee*, 61 N.H. 423, 425 (1881); *see also In re Groban*, 352 U.S. 330, 346 (1957) (Black, J., dissenting); *In re Opinion to the Governor*, 4 A.2d 487, 489 (R.I. 1939). The defendant contends that the wording of the indictment makes it impossible to conclude whether at least twelve grand jurors concurred that one of the three alleged acts, *i.e.*, penile penetration, digital penetration, or penetration by the manipulation of an object, had occurred, and, therefore, impossible to determine whether the defendant was convicted of a crime with which he was charged.

In *State v. Greene*, 137 N.H. 126 (1993), dealing with the requirement of unanimity for a petit jury, we distinguished between the means of committing a crime and the elements requiring proof beyond a reasonable doubt. In *Greene*, the State alleged that the defendant committed unprivileged contact by three separate blows: (1) punching an officer in the face; (2) punching an officer in the torso; and (3) kicking an officer about the body. *Greene*, 137 N.H. at 127-28. The trial court instructed the jury that it could find the defendant guilty of simple assault if it found any of the three contacts had occurred, regardless of whether it was unanimous as to which contact occurred. *Id.* at 128. In reversing the trial court, we stated that "[a] conviction would have been proper if the jury had all agreed, for instance, that the defendant struck the officer in the face, but disagreed as to whether the blow occurred from the fist or knee." *Id.* at 129. We further stated that "[a]lso unassailable would have been a verdict of guilty based on agreement that a blow was struck to the officer's torso, despite disagreement as to the body part of the defendant that caused the blow." *Id.*

■ Although we dealt with the petit jury in *Greene*, we believe that the analysis is equally applicable to a grand jury. In the present case, the indictment alleged only *one* sexual penetration of the victim's genital opening, unlike the multiple contacts alleged in *Greene*. The element the State needed to prove in this case was that a sexual penetration occurred, while the method by which that alleged penetration occurred merely established the means of committing the prohibited act. Thus, the grand jury did not have to agree on the body part or object used by the defendant to commit the penetration, but rather had to concur that the element of penetration had occurred. Because the grand jury agreed upon the element of penetration, it is clear that the defendant was convicted of the charged offense. Therefore, we reject the defendant's argument.

The defendant's next issue on appeal is that the court erred in limiting his right to cross-examine the victim in violation of Part I, Article 15 of the

New Hampshire Constitution and the Sixth and Fourteenth Amendments of the Federal Constitution. The constitutional right to cross-examine adverse witnesses in criminal cases is fundamental and includes the right to impeach a witness's credibility through cross-examination. *State v. Locke*, 149 N.H. 1, 11 (2002). In determining the limits of cross-examination, a trial court must balance the prejudice, confusion, and delay of the proffered testimony against its probative value. *Id.* Although the trial court has broad discretion in determining the scope of cross-examination, it may not completely deny a defendant the right to cross-examine a witness on a proper matter of inquiry. *Id.* Once a defendant has been permitted a threshold level of inquiry, however, the constitutional standard is satisfied, and the judge's limitation of cross-examination thereafter is measured against an unsustainable exercise of discretion standard. *Id.* Thus, when the record reveals that a threshold level of inquiry was allowed, we will uphold the trial court's decision limiting the scope of further cross-examination unless the defendant demonstrates that the court's ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

■ The defendant argues that, based upon the victim's husband's testimony in a pre-trial deposition, he should have been allowed to question the victim about her husband's and the defendant's prior drug use at the apartment. We find the defendant's argument unpersuasive.

While the victim's husband's deposition demonstrated that the defendant and the husband had drunk alcohol and smoked marijuana at the apartment on approximately ten prior occasions, nothing in the deposition indicated that the victim had herself drunk alcohol or smoked marijuana on those occasions or that the illegal activity was in any way connected to any sexual activity. Indeed, as the trial court indicated, it would be a "quantum leap," in this case, to make such a connection. Furthermore, there was no evidence that the victim, the defendant or her husband smoked marijuana on the night of the incident, or that anyone other than the defendant drank any alcohol.

The defendant argues that the introduction of the evidence of the prior drug use would have allowed him to discredit the victim's testimony because she had lied about that drug use in her deposition. The record reflects, however, that the defendant was able to ask the victim about lies she told at the deposition, and specifically that she lied about previous police contacts and lied about her husband's past. Thus, it is clear that the defendant was able to make a sufficient threshold level of inquiry to discredit the witness in the eyes of the jury and to establish that the victim lied at her deposition. It is unclear, and the defendant makes no persuasive

argument, why he specifically needed to point to her lie about her husband's previous drug use to effectively discredit her testimony. *Cf. State v. Etienne*, 146 N.H. 115, 118 (2001) (holding that the defendant should have been allowed to question a witness about a pending civil matter to inquire into potential bias due to the hope of financial gain.)

We find that the court's decision to limit the scope of the defendant's cross-examination of the victim constituted a sustainable exercise of discretion. As the Federal Constitution offers the defendant no greater protection than does our State Constitution under these circumstances, *see Locke*, 149 N.H. at 11; *United States v. Callipari*, 368 F.3d 22, 36 (1st Cir. 2004), we reach the same result under the Federal Constitution as we do under the State Constitution.

Finally, the defendant argues that the trial court erred in denying his motion for a new trial based upon ineffective assistance of counsel in violation of his right under Part I, Article 15 of the New Hampshire Constitution and the Sixth and Fourteenth Amendments of the United States Constitution. To successfully assert a claim for ineffective assistance of counsel, a defendant must first show that counsel's representation was constitutionally deficient and, second, that counsel's deficient performance actually prejudiced the outcome of the case. *State v. Roy*, 148 N.H. 662, 664 (2002). We have recognized that broad discretion is permitted trial counsel in determining trial strategy, and the defendant must overcome the presumption that counsel's trial strategy was reasonably adopted. *Id.* We afford a high degree of deference to the strategic decisions of trial counsel, bearing in mind the limitless variety of strategic and tactical decisions that counsel must make. *State v. Dewitt*, 143 N.H. 24, 30 (1998). Criminal defendants are entitled to reasonably competent assistance of counsel, but not perfection in trial tactics, or success. *Id.*

During the defendant's opening statement, trial counsel referred to certain statements made by the victim's husband during his pre-trial deposition. The defendant refers to one such statement in which trial counsel, in attempting to characterize the expected testimony, stated, "And somehow he got into bed without waking anybody up. He ended up opening up my wife's legs and performed oral sex on her. Actually, [the victim's husband] says when he wakes up he thinks he sees [the defendant] performing oral sex on his wife by surprise."

The defendant argues that this statement and others referred to by trial counsel were inculpatory and corroborated the victim's version of events. Further, the defendant argues that it was not necessary to refer to the statements because the victim's husband did not testify. Thus, the defendant contends that the opening statement served only to corroborate

the victim's version of events without in any way helping to discredit the victim's or her husband's potential testimony.

The State counters that the defendant's argument "is merely a hindsight characterization of trial counsel's actions . . . [and that] [w]hen trial counsel actually made his opening statement, [the victim's husband] was a likely witness." The State contends that because defense counsel was aware of the victim's husband's likely testimony and the powerful corroboration that it could provide, defense counsel sought to undermine that effect with his opening attack on the victim and her husband. Thus, the State points to another portion of the opening statement in which defense counsel states:

> You have two people, the two key witnesses for the State, saying I don't know what happened. Somebody had oral sex with me or maybe they touched me with their fingers. You've got the husband sitting right there six inches away, sleeps through the whole thing. That is implausible. That is completely not credible. The idea that everyone is there sober, clear headed, makes no sense.

Thus, the State concludes that, given the limited options available due to the evidence against the defendant, trial counsel reasonably chose to assert that "the defendant was somehow taken advantage of while he was allegedly under the influence of drugs and alcohol."

We agree with the State. The victim's husband was available to testify and could have provided testimony corroborating the events that occurred immediately after the victim woke him. Defense counsel's reference to the victim's husband's version of events, taken in context, merely attempted to discredit the potential testimony.

Even if we assume that defense counsel should not have made reference to the victim's husband's version of events, the defendant has not demonstrated that actual prejudice occurred. To demonstrate actual prejudice he must show that there is a reasonable probability that the result of the proceeding would have been different. *State v. Sanchez*, 140 N.H. 162, 163 (1995). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the case. *State v. Wisowaty*, 137 N.H. 298, 302 (1993).

■ Trial counsel's opening statement is not evidence. *Roy*, 148 N.H. at 664. While there may be references made during an opening statement that are so prejudicial that a defendant's constitutional rights are implicated, we do not construe counsel's references here to the victim's husband's statements to be such a case. *See id.* at 664-65. Although defense counsel could have waited to determine whether the State would call the

victim's husband to testify, his decision to preempt the victim's and husband's potential testimony by attempting to discredit their version of events constituted a reasonable tactical decision. Furthermore, no actual prejudice has been demonstrated because, given the victim's version of events, the scientific evidence, and the defendant's recorded statements, there was ample evidence to convict the defendant, leaving no reasonable probability that the references in the opening statement would undermine confidence in the outcome of the case.

As the Federal Constitution offers the defendant no greater protection than the State Constitution under these circumstances, *see id.* at 664; *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), we reach the same result under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DUGGAN and GALWAY, JJ., concurred.