Rockingham
No. 2006-393

THE STATE OF NEW HAMPSHIRE

v.

FRANCIS KEPPLE

Argued: January 18, 2007
Opinion Issued: April 18, 2007

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Getman, Stacey, Schulthess & Steere, PA*, of Bedford (*Andrew R. Schulman* on the brief and orally), for the defendant.

BRODERICK, C.J. Following a jury trial, the defendant, Francis Kepple, was convicted of aggravated felonious sexual assault (AFSA) through concealment or by the element of surprise, RSA 632-A:2, I(i) (1996) (amended 2003), aggravated felonious sexual assault by a person related by blood or affinity, RSA 632-A:2, I(j)(2) (1996) (amended 2003), endangering the welfare of a child, RSA 639:3 (1996) (amended 2002, 2003), and criminal solicitation, RSA 629:2 (Supp. 2004). On direct appeal,

we affirmed the defendant's convictions. *See State v. Kepple*, 151 N.H. 661 (2005). The defendant now appeals an order of the Superior Court (*Coffey*, J.) denying, in part, his motion for post-conviction relief. He argues that the court erred by not concluding that his trial counsel provided him with ineffective assistance. We affirm.

The essential facts of this case are set out in our opinion on the defendant's direct appeal, *id.* at 662, so we do not repeat them here. Rather, we will discuss various aspects of the defendant's trial as we examine his arguments.

After we affirmed the defendant's conviction, he moved for post-conviction relief, some of which was granted. However, the court denied his motion to the extent that he: (1) argued that the evidence at trial did not establish the "concealment or surprise" element of the variant of AFSA with which he was charged; (2) argued that the evidence at trial did not establish that he owed a duty of care to the victim, which is required to support a conviction for endangering the welfare of a child; and (3) requested a new trial, based upon a claim of ineffective assistance of trial counsel. This appeal followed.

I

The defendant argues that his trial counsel provided him with ineffective assistance, in violation of his rights under Part I, Article 15 of the New Hampshire Constitution and the Sixth Amendment to the United States Constitution. Specifically, he contends that his representation was constitutionally deficient because his counsel failed to: (1) argue that the State actually disproved the concealment or surprise element of RSA 632-A:2, I(i); (2) argue that the State disproved that he owed the victim a duty of care; and (3) object to either the prosecutor's alleged description of him as a "jungle animal" or the introduction of a tape recording of the victim that contained inadmissible impact evidence.

Because the standard for determining whether a defendant has received ineffective assistance of counsel is the same under both the State and Federal Constitutions, we will examine the constitutional competency of counsel's performance under the State Constitution, and rely upon federal case law only for guidance. *State v. Roy*, 148 N.H. 662, 664 (2002). Necessarily, we reach the same result under the Federal Constitution as we do under the State Constitution. *State v. Flynn*, 151 N.H. 378, 391 (2004).

The State and Federal Constitutions guarantee a criminal defendant reasonably competent assistance of counsel. *State v. Walton*, 146 N.H. 316, 318 (2001). To successfully assert a claim for ineffective assistance of

counsel, a defendant must first show that counsel's representation was constitutionally deficient and, second, that counsel's deficient performance actually prejudiced the outcome of the case. *Flynn*, 151 N.H. at 389. On appeal, when we determine that a defendant has failed to meet either prong of the test, we need not consider the other one. *See Roy*, 148 N.H. at 665 ("Because the defendant has not demonstrated that his counsel's performance was deficient, we need not address whether he was actually prejudiced by counsel's conduct."); *Walton*, 146 N.H. at 318 ("If the defendant is unable to demonstrate . . . prejudice, we need not even decide whether counsel's performance was deficient.").

■ To meet the first prong of the test, a defendant must show that counsel made such egregious errors that he or she failed to function as the counsel that the State Constitution guarantees. *State v. Dewitt*, 143 N.H. 24, 29 (1998). Broad discretion is afforded trial counsel in determining trial strategy, and the defendant must overcome the presumption that counsel's trial strategy was reasonably adopted. *Flynn*, 151 N.H. at 389. We afford a high degree of deference to the strategic decisions of trial counsel, bearing in mind the limitless variety of strategic and tactical decisions that counsel must make. *Id.* In resolving whether a counsel's strategy was reasonably adopted, we will not disturb the factual findings of the trial court unless they are not supported by the evidence or are erroneous as a matter of law. *Roy*, 148 N.H. at 665.

■ To show actual prejudice, under the second prong of the ineffective-assistance test, a defendant must demonstrate that there is a reasonable probability that the result of the proceeding would have been different had competent legal representation been provided. *Flynn*, 151 N.H. at 390. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the case. *Id.* The prejudice analysis considers the totality of the evidence presented at trial. *State v. Croft*, 145 N.H. 90, 92 (2000).

## II

At the time of the events that gave rise to the charges against the defendant, New Hampshire's AFSA statute provided, in pertinent part:

> A person is guilty of the felony of aggravated felonious sexual assault if he engages in sexual penetration with another person under any of the following circumstances:
>
> . . . .
>
> (i) When the actor through concealment or by the element of surprise is able to cause sexual penetration with the victim before the victim has an adequate chance to flee or resist.

RSA 632-A:2, I.

At trial, the State introduced evidence that the defendant, knowing that the victim had an alcohol problem, hired her to help him clean a house, supplied her with a bottle of vodka, encouraged her to drink from it and performed oral sex on her after she had consumed between a third and a half of the bottle. The victim also testified that while the defendant was undressing her and performing oral sex on her, she "just checked out of [her] body," and that as soon as she realized what was going on, she gathered her clothes, got dressed, and ran out of the house. The State's theory of the case was that by encouraging the victim to drink alcohol, knowing that she had an alcohol problem, the defendant was able to cause sexual penetration with her through concealment or by the element of surprise. At trial, the victim described the defendant's actions in detail and testified that as soon as she was able, she left the house and that shortly thereafter, she ran into her softball coach and practiced her pitching with him.

The defendant's counsel did not move for dismissal at the end of the State's case or for a directed verdict at the close of the evidence. The defendant's counsel began his closing argument in the following way:

> May it please the court, Mr. Watkins, members of the jury. It doesn't make any sense. The matter is that simple. From a drunken stupor to a pitching on the softball field within an hour. It doesn't make any sense. And that['s] because the State's entire case doesn't make any sense, your verdict must be not guilty.

Following guilty verdicts, the defendant's counsel did not move for a judgment notwithstanding the verdict (JNOV).

In his motion for post-conviction relief, the defendant asked the court to vacate and dismiss his conviction for AFSA by concealment or surprise, arguing that while the victim's testimony affirmatively disproved the element of concealment or surprise, his trial counsel failed to: (1) move for dismissal at the end of the State's case; (2) move for a directed verdict at the close of the evidence; (3) argue to the jury that the State had failed to prove the element of concealment or surprise; and (4) move for a JNOV. He challenged both the sufficiency of the evidence and his trial counsel's failure to raise that issue before the court or the jury. The court rejected the defendant's argument on the sufficiency of the evidence, explaining "that there are sufficient parallels between past examples of AFSA by concealment or surprise and the Defendant's actions here so that, as a matter of law, his conviction on that charge was not improper." The court did not conduct a separate ineffective assistance of counsel analysis regarding this claim because there was no need to do so; its rejection of

the defendant's sufficiency of the evidence argument necessarily disposed of the ineffective assistance claim, due to a lack of actual prejudice.

The defendant argues on appeal that because the victim testified in detail about how he partially undressed her and performed oral sex on her, his trial counsel performed in a constitutionally deficient manner by failing to: (1) ask the trial court to rule, as a matter of law, that the State failed to prove concealment or surprise; and (2) raise the issue of concealment or surprise before the jury in his closing argument. The defendant's argument has two components, one legal, the other essentially factual. Legally, the defendant argues that according to New Hampshire's jurisprudence on concealment or surprise, that variant of AFSA focuses upon the actions of the defendant rather than the condition of the victim, while here, the trial evidence and the State's theory of the case focused solely upon the condition of the victim. Factually, the defendant argues that because the victim had a clear memory of his undressing her, she could not have been surprised when he subsequently performed oral sex on her.

We begin with the legal component of the defendant's argument. Our AFSA statute does not define the terms "concealment" or "surprise." And while we have decided cases involving convictions under RSA 632-A:2, I(i), see *Flynn*, 151 N.H. 378; *State v. Ramos*, 149 N.H. 272 (2003); *State v. Arris*, 139 N.H. 469 (1995), none of those cases required us to decide whether a particular set of circumstances met the statutory element of concealment or surprise. Thus, we have established no jurisprudence on concealment or surprise, only a trio of cases in which the defendants chose not to appeal the applicability of the statute to the acts they were accused of committing. As the defendant correctly notes, we have characterized the RSA 632-A:2, I(i) analysis as "focus[ing] on the actions of the *defendant*," *State v. Grimes*, 152 N.H. 310, 313 (2005), but we have never held that the acts alleged and proven in this case—one person causing the sexual penetration of another to whom he has provided alcohol—fall outside the scope of RSA 632-A:2, I(i).

Authority from other jurisdictions is similarly unavailing to the defendant's position. The Rhode Island Supreme Court has affirmed a conviction under a statute similar to ours where the trial judge "concluded that the evidence indicated that the victim was in an impaired and at times, an unconscious condition and that, as a result, the definition of 'surprise' was broad enough to include the actions of [the] defendant." *In re Paul M.*, 626 A.2d 694, 695 (R.I. 1993). Significantly, the Rhode Island case, unlike the case before us, contained no evidence that the victim's impairment resulted from the actions of the defendant, yet the circumstances of that

case still fit within the statutory rubric of concealment or surprise. We have found no other reported case on point. However, several unreported cases also support the State's position. *See, e.g., People v. Ferguson*, No. 263275, 2006 WL 3298902, at *2 (Mich. Ct. App. Nov. 14, 2006) (relying upon dictionary definition of "'surprise' as 'to strike with a sudden feeling of wonder or astonishment, esp. by being unexpected'"); *People v. Shingledecker*, No. 259140, 2006 WL 1084348, at *3 (Mich. Ct. App. Apr. 25, 2006) (holding that statutory requirement of "surprise" was met by evidence of victim's response to defendant's actions); *People v. Tran*, No. 236621, 2003 WL 21362988, at *3 (Mich. Ct. App. June 12, 2003) (defining "sexual contact by the element of surprise" as occurring when a person "engag[es] in sexual contact with a victim in circumstances in which it would be unexpected"). On the other hand, we have found no foreign authority that supports the defendant's argument that the circumstances of this case do not amount to concealment or surprise.

■ In order for the defendant to demonstrate actual prejudice in this case, he must show that a motion for dismissal, a directed verdict, or a JNOV based upon the State's failure to establish the element of concealment or surprise would properly have been granted. *Humphrey v. Cunningham, Warden*, 133 N.H. 727, 733 (1990). Based upon our review of foreign authority, in conjunction with our own decision in *Grimes*, 152 N.H. at 313, we conclude that the motions the defendant claims his counsel should have made would not properly have been granted. Here, the victim testified that at some point during the assault, she became aware of what the defendant was doing to her, and was startled enough by her realization to flee the scene. Moreover, it is undisputed that the defendant provided the victim with alcohol, the consumption of which placed her in a mental state which allowed her to be assaulted without fully realizing what was happening to her. Because the trial court would have erred by granting the motions the defendant claims his counsel should have made, we hold that, as to the legal component of his argument, the defendant has not established that he was prejudiced by his counsel's performance. *See Humphrey*, 133 N.H. at 733.

While arguing that the victim's condition was immaterial to a proper legal analysis of concealment or surprise, the defendant also appears to argue that his trial counsel performed deficiently by failing to argue to the court or to the jury that the victim's ability to recall and describe the events leading up to the act of penetration disproved the element of concealment or surprise. We disagree.

First of all, we disagree that the evidence at trial entitled the defendant to judgment as a matter of law. In the defendant's view, the victim's ability

to describe the manner in which he undressed her demonstrated, as a matter of law, that he concealed nothing from her and could not have surprised her when he moved from undressing her to performing oral sex. However, there was also evidence that while the defendant was undressing the victim, and while he was performing oral sex on her, she was mentally detached and did not realize what the defendant was doing to her. Moreover, there was evidence that at some point after the assault began, the victim did realize what was happening to her, and quickly gathered her clothes, got dressed, and ran out of the house. In light of the evidence of the victim's initial detachment, contrasted with her subsequent realization of the situation and her flight from it, the defendant was not prejudiced by his counsel's failure to seek dismissal, a directed verdict, or a JNOV. Because there was evidence supporting the State's claim that the victim's impairment allowed her to be surprised by the defendant's actions, there is not a reasonable probability that those motions would have been granted and, consequently, the defendant was not prejudiced by his counsel's failure to make them *See Flynn*, 151 N.H. at 390.

■ Moreover, the defendant's characterization of his counsel's argument to the jury is not borne out by the record. The defendant contends that his trial counsel did not even mention the words "concealment" or "surprise" in his closing argument. However, at the very beginning of his closing argument, the defendant's counsel expressly called into question the State's proof concerning the degree of the victim's impairment. Because the only possible reason to challenge the State's proof of the victim's impairment was to argue that she was not sufficiently impaired to have been surprised by the defendant's actions, we cannot agree with the defendant that his counsel failed to argue to the jury that the State had failed to prove the element of concealment or surprise.

## III

The child endangerment statute under which the defendant was convicted provides, in pertinent part:

> A person is guilty of endangering the welfare of a child . . . if he knowingly endangers the welfare of a child under 18 years of age . . . by purposely violating a duty of care, protection or support he owes to such child . . . or by inducing such child . . . to engage in conduct that endangers his health or safety.

RSA 639:3, I. Violation of RSA 639:3, I, is a misdemeanor. RSA 639:3, V.

The relevant indictment charged that the defendant "knowingly, endangered the welfare of J.P., a child under the age of 18 years of age by

purposely violating a duty of care he owed to J.P. as J.P.'s step-grandfather." At trial, the State introduced evidence that the defendant was married to the victim's stepmother's mother, that he was a part of the victim's extended family, that the victim had known him since she was four or five years old, and that she saw him at various family gatherings. The jury also heard the victim testify that she was with the defendant on the day of the assault because "he had asked [her] stepmother if [she, the victim] wanted to come over [to] the house and help him clean it up a little bit and earn some extra money." The defendant's counsel never moved for dismissal, a directed verdict, or a JNOV on the theory that the State failed to prove that the defendant owed the victim a duty of care, and never argued this issue to the jury.

In his motion for post-conviction relief, the defendant argued, successfully, that the trial court erroneously sentenced him for a felony violation of RSA 639:3 rather than a misdemeanor violation, *see* RSA 639:3, III, V. He further argued, unsuccessfully, that because the victim was the stepdaughter of his stepdaughter: (1) he was not the victim's step-grandfather, as alleged in the indictment, but rather was her step-step-grandfather, which rendered his conviction under the indictment a due process violation; (2) the evidence was insufficient to establish that he owed the victim a duty of care as required by RSA 639:3, I; and (3) his trial counsel was ineffective by failing to raise those issues with the court or before the jury. Because the court vacated the defendant's felony-level sentence and ordered him resentenced for a misdemeanor, it treated the three issues listed above as moot and declined to address them.

On appeal, the defendant argues that his counsel provided ineffective assistance by failing to argue that: (1) he was the victim's step-step-grandfather, not her step-grandfather, as alleged in the indictment; and (2) as the stepfather of the victim's stepmother, he had no relationship with the victim by blood or by marriage that would impose upon him the duty of care necessary to convict him under RSA 639:3, I. We do not agree.

██ Because the defendant has inadequately developed the argument that there is a legal distinction between a step-grandfather and a step-step-grandfather, we decline to address his counsel's failure to raise that issue. *See In the Matter of Bazemore & Jack*, 153 N.H. 351, 356 (2006). To the extent he contends that his counsel should have argued that, as a step-step-grandfather, he could not have been convicted under an indictment that labeled him a step-grandfather, we disagree, because under RSA 639:3, I, the defendant's precise affinal relationship to the victim is not an element of the offense with which he was charged. Accordingly, we turn to

the defendant's second argument, that he did not owe the victim a duty of care.

In *State v. Yates*, 152 N.H. 245 (2005), our first case addressing the duty of care element of RSA 639:3, I, we "determined that the [relevant] portion of RSA 639:3, I, imposes liability only upon individuals who have a familial, or similar/supervisory relationship with a child," *Yates*, 152 N.H. at 259. The question in *Yates* was whether an eighteen-year-old defendant owed a duty of care to an unrelated fourteen-year-old victim sufficient to trigger criminal liability under RSA 639:3, I. *Id.* at 254. We held that the defendant did not owe the victim such a duty of care. *Id. Yates*, however, did not establish any sort of formula for determining the degree of relationship necessary to trigger a duty of care, and by referring to familial or similar supervisory relationships with a child, we construed the statute narrowly enough to exclude an unrelated peer with no supervisory responsibility but broadly enough to include the defendant in this case. Not only was there evidence before the jury that the victim's primary contact with the defendant prior to the assault came at family functions, there was also evidence that when the defendant asked the victim to help him with a cleaning project, he did not ask her directly, but made the request through the victim's stepmother, who was his stepdaughter. Thus, the jury had before it evidence that the defendant's contact with the victim came about through familial channels and that the arrangements for the victim's contact with the defendant on the day of the assault were made between two adult family members. Given that evidence, the defendant was not prejudiced by his counsel's failure to argue that the evidence did not support a finding that the defendant owed the victim a duty of care. *See Flynn*, 151 N.H. at 390.

## IV

Finally, the defendant argues that his counsel performed ineffectively by failing to object to: (1) the introduction of a tape recording of a telephone conversation he had with the victim; and (2) the prosecutor's references to him as a predator during both his opening statement and his closing argument. We address each issue in turn.

## A

At trial, the State introduced into evidence a tape recording of a telephone call made by the victim to the defendant. The victim agreed to make the call at the request of a police officer who was investigating her report that she had been assaulted. The jury heard testimony that the victim's side of the conversation was based upon a script prepared for her

by the police. During her telephone conversation with the defendant, the victim said, among other things:

— Did you know that I broke up with my boyfriend because of this? Because ... thanks to you ... I can't handle anyone touching me now ... because I have flashbacks.

— I have flashbacks. My boyfriend will go to give me a hug and I think of you and what you did to me. So I had to break up with my boyfriend because of this.

— What am I gonna do? I cry every single night because of you.

— I mean, how ... how could you have done this to me like that. I can't even think about talking to Gram anymore, because I'm ashamed and embarrassed.

— Did you know that me and Jackie went shopping a couple of weeks ago? And we went through Raymond? The second I knew that we were in Raymond I started crying my eyes out. And she kept asking me what's wrong, what's wrong? And I said nothing ... I don't want to talk about it. But I was still really messed up and as I said I'm scared but ... well and I don't know what else to do.

— So, what, what should I do with myself? I mean, I can't just sit around thinking about this for the rest of my life ... and ....

While the defendant's trial counsel objected to the introduction of the tape recording quoted above on grounds that the tape was made in violation of the Federal Wiretap Act, an issue we decided on direct appeal, *see Kepple*, 151 N.H. at 665, counsel did not argue that the victim's side of the taped conversation was inadmissible victim impact evidence.

In his motion for post-conviction relief, the defendant argued that his trial counsel performed ineffectively by failing to object to the introduction of the tape recording. The court disagreed, pointing out that the admissions the defendant made in response to the victim's questions and statements were admissible and were so intertwined with the victim's side of the conversation that if her statements were edited out, the remainder of the tape would have been nonsensical.

On appeal, the defendant argues, under New Hampshire Rule of Evidence 403, that the taped conversation contained victim impact evidence that unfairly prejudiced him by impermissibly appealing to the emotions of the jury, and that his counsel provided ineffective assistance by failing to object. The State counters that the jury could not have

understood the victim's statements to have reflected her own feelings because it heard testimony that the victim's side of the conversation came from a script prepared by the investigating officers. We agree.

█ At trial, Lieutenant Shawn Coope testified that he "developed a plan with the county attorney's office, a short script, if you will, for what [he] might want in this case [f]or the child to say, what to ask, and changes made on a case by case basis." Based upon that testimony, and the lack of any evidence that the victim embellished the script in any way, her side of the conversation could not have improperly appealed to the emotions of the jury; the jury was told, expressly, and without contradiction, that the words the victim used were not hers, but were the words of the investigating officer and/or the county attorney. Because the tape recording had no capacity to inflame the passions of a reasonable juror, the defendant was not prejudiced by his trial counsel's failure to object to its admission. *See Flynn*, 151 N.H. at 390.

B

The prosecutor began his opening statement to the jury as follows:

> Throughout history, the world has been full of predators and prey. A predator, an animal, perhaps finds a herd and after doing so, he selects, chooses his prey by identifying the elderly, the sick, the lame or the young. Once he does that, he seeks his opportunity. Isolating perhaps that victim, that prey, from the herd, and then he strikes.
>
> This matter is very similar. In this case, the defendant, who is the step-grandfather of the victim, knew that there was an issue with his step-granddaughter, [J.P.]. He knew that she had had an issue with alcohol. And on the date of the incident, July 18, 2001, he got her alone. He provided her with a bottle of vodka. He had her drink it. She became intoxicated and he raped her. And that's what this case is going to be about.

He returned to the predator theme near the beginning of his closing argument:

> I began this trial by describing the defendant as a predator. And what does a predator do? He selects his prey. He isolates his prey. He identifies the weakness. He acts on that. And then he moves in for the kill. And that's exactly what the facts in this case demonstrate. That the defendant in this case was aware of the family situation. He knew that [J.P.] had an issue with alcohol. He got her alone for the first time. He gave her alcohol to take

advantage of that weakness. And when he had her incapacitated, he raped her, and that's what the evidence demonstrates in this case.

The defendant's counsel did not object to either the opening statement or the closing argument.

In his motion for post-conviction relief, the defendant argued that his trial counsel performed ineffectively by failing to object when the prosecutor compared him to a jungle animal. The court was not persuaded, explaining:

the prosecuting attorney made a mild appeal to the passions of the jury in [his] opening statement, that might have required a corrective instruction from the Court had it been appropriately objected to [but that] [t]he prosecutor did not baldly label the Defendant some sort of jungle beast in an inflammatory outburst, however, as the Defendant's memo implies, but instead analogized the Defendant's behavior in a manner that, considering the evidence, the jury could have found apt.

We agree.

 The defendant argues that his trial counsel's failure to object to the prosecutor's metaphor was ineffective assistance because "[t]o state the obvious, it is improper and unethical for a prosecutor to compare the accused to some sort of jungle animal." The prosecutor did not compare the defendant to a "jungle animal," a term which appears in this case only in the defendant's brief. Rather, the prosecutor compared the defendant to a predator, used a reference to the natural world to explain how predators operate, and carefully analogized the defendant's conduct, act by act, to the behavior of natural predators. The term "predator," in turn, is hardly confined to the animal world. Our own statutes demonstrate that "predator" is also a term of art in the realm of sexual offenses; RSA chapter 135-E (Supp. 2006) bears the title "Involuntary Civil Commitment of Sexually Violent Predators." If the prosecutor's use of the predator analogy was improper at all, it was only marginally so. *See State v. Martin*, 138 N.H. 508, 516 (1994) (explaining, in response to challenge to prosecutor's opening statement, that to justify a mistrial, remarks or the conduct of counsel must be more than merely inadmissible; they must constitute an irreparable injustice that cannot be cured by a jury instruction); *State v. Dayutis*, 127 N.H. 101, 103 (1985) ("The standard for reversible error in a prosecutor's opening statement is that the prosecutor must be shown to have acted in bad faith, the opening statement must be completely unsupported by the evidence; *and* the defendant must be

prejudiced thereby."); *State v. Wood,* 150 N.H. 233, 234-36 (2003) (finding no prosecutorial misconduct when prosecutor referred to defendant as a "child molester" during closing argument). We agree with the trial court that the defendant failed to demonstrate a reasonable probability that the result of his trial would have been different if his counsel had objected to the prosecutor's predator analogy. Accordingly, the defendant was not prejudiced by his counsel's failure to do so. *See Flynn,* 151 N.H. at 390.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.