NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2018-0096

THE STATE OF NEW HAMPSHIRE

v.

JONATHAN J. MARDEN

Argued: January 17, 2019
Opinion Issued: June 14, 2019

Gordon J. MacDonald, attorney general (Stephen D. Fuller, senior assistant attorney general, on the brief and orally), for the State.

Wadleigh, Starr & Peters, P.L.L.C., of Manchester (Donna J. Brown on the brief and orally), for the defendant.

BASSETT, J. The State appeals an order of the Superior Court (Mangones, J.) setting aside the jury's guilty verdict against the defendant, Jonathan J. Marden, on one charge of aggravated felonious sexual assault. See RSA 632-A:2, I(m) (2016). The trial court concluded that the defendant's trial counsel, who is not his appellate counsel, rendered ineffective assistance of counsel when he failed to object to the testimony of the State's expert witness, Dr. Gwendolyn Gladstone, a physician specializing in the care of abused or neglected children. The trial court found that, even though Gladstone did not explicitly opine that the complainant had been sexually assaulted, her testimony ran afoul of our general prohibition against offering

expert testimony "to prove that a particular child has been sexually abused." State v. Cressey, 137 N.H. 402, 412 (1993). We affirm.

The record establishes the following facts. The complainant and the defendant had been in a personal relationship from about February to May 2016. The complainant alleged that on October 26, 2016, the defendant sexually assaulted her in the defendant's vehicle in the parking garage outside of her workplace. After being contacted by mall security, the complainant's supervisor and a security official went to the parking garage and saw two people that "appeared to be having sex" in the passenger seat of one of the cars. The supervisor knocked on the car window; the defendant then moved away from the complainant to the driver's seat. At that point, the supervisor recognized the complainant. The defendant was ordered to leave the property. The complainant was visibly upset when she returned to the store. She told her supervisor that she had been raped and expressed concern that she would lose her job. The defendant contends that the sexual relations were consensual, whereas the complainant asserts that they were not. At the time of the incident, the complainant was 17 years old and the defendant was 20 years old.

At trial, the State called Gladstone as a witness as part of its case-in-chief. Gladstone is a board-certified physician with a "sub specialty board certification in child abuse." At the time of trial, Gladstone was an administrator of the Child Advocacy and Protection Program at Dartmouth-Hitchcock. Her duties included reviewing policies related to the medical care of children "where there's a question of . . . maltreatment," and advising "various entities," including New Hampshire's child protection system. Before she was an administrator, Gladstone had a pediatric practice and specialized in caring for children suspected of being abused or neglected. Gladstone testified that she belongs to the American Professional Society on the Abuse of Children, the American Academy of Pediatrics Council on Child Abuse and Neglect, the Ray Helfer Society (an international society of physicians who deal with child abuse and neglect), the International Society on the Abuse of Children, and the New Hampshire Attorney General's Task Force on Child Abuse and Neglect. Gladstone informed the jury that she had testified "[s]everal dozen times" as an expert "[p]rincipally in the area of child abuse." The State moved to qualify Gladstone as an expert. The defendant did not object. The trial court granted the motion, informing the jury that, because Gladstone was qualified as an expert, "she may render an opinion in this matter."

Gladstone proceeded to tell the jury that, following the October incident, the complainant's primary care provider had referred the complainant to the Child Advocacy and Protection Program at Dartmouth-Hitchcock, with which she was then clinically affiliated. Gladstone testified that she medically evaluated the complainant three weeks after the alleged assault. The purpose of the evaluation was to review the complainant's medical care, including,

"what medication she had been given, how she was doing both physically and emotionally[,] . . . [and to determine] whether she had been connected with a counselor." Gladstone testified that the complainant told her that "[s]he was having some vaginal irritation and she was concerned that that might indicate that she had acquired an infection." The State then asked: "What other symptoms of significance did she mention to you during your conversation with her?" Defense counsel did not object to the question. Gladstone responded:

> She had some physical symptoms and she had some emotional symptoms. Physical symptoms included the genital irritation that I talked about. She also had difficulty with her appetite and had lost weight. She had difficulty sleeping. She felt sad and was crying. She described having less ability to go out of her house to play outside with her brother, to go to school, to socialize.

> She'd had some preoccupation with thoughts that had made it hard for her to concentrate at school. She had some intrusive images of the assault. And as a consequence she couldn't concentrate on her school work and had gotten some bad grades, whereas previously she had been on the honor roll.

> . . . .

> She told me that her symptoms were getting better, but that they were still present and this was at more than three weeks after the assault.

> . . . .

> Based on the information . . . gathered from [the complainant], I recommended that she be tested for sexual infections. I recommended that she be tested for pregnancy because the first test had been done too soon after the assault to be sure that that hadn't happened. I recommended that she see a counselor, because of the persistence of her symptoms, despite several weeks having passed.

The jury convicted the defendant of aggravated felonious sexual assault. See RSA 632-A:2, I(m). Shortly thereafter, the defendant retained new counsel. The defendant's new counsel moved to set aside the verdict on the ground that the defendant's trial counsel rendered ineffective assistance because he had failed to object to Gladstone's testimony regarding the complainant's "symptoms of significance." The defendant argued that, under Cressey, Gladstone, as "an esteemed expert in the field of child sexual assault," should not have been allowed to testify "about 'symptoms of significance' regarding the

3

alleged [complainant's] emotional and mental state three weeks following the alleged assault."

Following an evidentiary hearing, the trial court ruled that the defendant's trial counsel's representation was constitutionally deficient. The trial court set aside the verdict and granted a new trial. The State unsuccessfully moved for reconsideration. This appeal followed.

On appeal, the State argues that the trial court erred when it ruled that defense counsel's failure to object to Gladstone's testimony regarding the complainant's "symptoms of significance" constituted ineffective assistance of counsel. The defendant counters that the trial court ruled correctly because Gladstone "improperly linked the behavioral and emotional symptoms specific to the complainant in this case to the sexual assault at issue" and counsel's failure to object prejudiced the outcome of the case. We agree with the defendant.

The State and Federal Constitutions guarantee a criminal defendant reasonably competent assistance of counsel. N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VI. To demonstrate a violation of this right, the defendant must show that his counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. State v. Eschenbrenner, 164 N.H. 532, 539 (2013). We first examine the constitutional competency of counsel's performance under the State Constitution, and rely upon federal case law only to aid in our analysis. Id.; State v. Ball, 124 N.H. 226, 231-33 (1983).

To prevail upon a claim of ineffective assistance of counsel, the defendant must demonstrate, first, that counsel's representation was constitutionally deficient and, second, that counsel's deficient performance actually prejudiced the outcome of the case. State v. Collins, 166 N.H. 210, 212 (2014). A failure to establish either prong requires a finding that counsel's performance was not constitutionally defective. Id.

To satisfy the first prong of the test, the performance prong, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id.; Strickland v. Washington; 466 U.S. 668, 688 (1984). To meet this prong of the test, the defendant must show that counsel made such egregious errors that he failed to function as the counsel the State Constitution guarantees. Collins, 166 N.H. at 212. We afford a high degree of deference to the strategic decisions of trial counsel, bearing in mind the limitless variety of strategic and tactical decisions that counsel must make. Id. at 212-13. The defendant must overcome the presumption that trial counsel reasonably adopted his trial strategy. Id. at 213. Accordingly, a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Id.

To satisfy the second prong, the defendant must demonstrate actual prejudice by showing that there is a reasonable probability that the result of the proceeding would have been different had competent legal representation been provided. State v. Wilbur, 171 N.H. 445, 449 (2018). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. The prejudice analysis considers the totality of the evidence presented at trial. Id.

Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. Collins, 166 N.H. at 213. Therefore, we will not disturb the trial court's factual findings unless they are unsupported by the evidence or erroneous as a matter of law, and we review the ultimate determination of whether each prong is met de novo. Id. Notably, here, because the judge who ruled on the motion to set aside the guilty verdict also presided at trial, the trial court is in a better position than we are to assess whether defense counsel's performance prejudiced the defendant. See State v. Whittaker, 158 N.H. 762, 775 (2009).

The trial court relied upon Cressey and its progeny when it determined that defense counsel rendered ineffective assistance. See Collins, 166 N.H. at 214-15 (citing cases); State v. Luce, 137 N.H. 419, 421 (1993); Cressey, 137 N.H. at 407, 412. In Cressey, we held that expert testimony may not be offered to prove that a particular child has been sexually abused. Cressey, 137 N.H. at 412. In later cases, we clarified that testimony regarding a sexual assault complainant's specific behavior is inadmissible if its purpose is to prove that abuse occurred or if an expert testifies that the particular complainant's behaviors are consistent with those of a person who has been sexually abused. State v. MacRae, 141 N.H. 106, 109 (1996).

Such testimony is inadmissible, in part, because it impermissibly bolsters the complainant's credibility. See id. at 110. An expert testifying that the particular complainant's behaviors are consistent with those of a sexual abuse victim, in effect, renders "an opinion on the accuracy of the victim's recitation of [the] facts." Id. (quotation omitted). Such an opinion is improper because "that determination is solely within the province of the jury." Collins, 166 N.H. at 214 (quotation omitted).

The reliability of evidence is of special concern when offered through expert testimony because of the risk that the jury will disproportionately defer to the expert's statements because the subject area is beyond the common knowledge of the average person, and because the expert's opinion is given with an air of authority. Cressey, 137 N.H. at 405. We have held that a defense counsel's failure to object to expert testimony that contravenes Cressey constitutes ineffective assistance of counsel. Collins, 166 N.H. at 214-15.

5

Our prior cases on the subject have involved expert witnesses who explicitly rendered inadmissible opinions. For instance, in Cressey, the expert opined that the symptoms exhibited by the child victims were consistent with those of a sexually abused child. Cressey, 137 N.H. at 404. Similarly, in Collins, the expert testified that the complainant's behaviors "fit perfectly" with those of a child sexual abuse victim and that she suffered from post-traumatic stress disorder caused by alleged sexual abuse. Collins, 166 N.H. at 214-15 (quotation omitted).

In the instant case, the trial court acknowledged that Gladstone, unlike the experts in the Cressey-line of cases, did not "explicitly draw a line between [the complainant's] 'symptoms of significance' and sexual abuse." However, the court concluded that, because the jury knew that Gladstone was an expert on child abuse and she had recounted the complainant's reported symptoms of significance, the jury could have inferred that she made that link.

On appeal, the State argues that the defendant's trial counsel's failure to object did not constitute ineffective assistance of counsel because Gladstone's testimony was "very different" from testimony we have previously found inadmissible under Cressey and its progeny. See Cressey, 137 N.H. at 407, 412. The State asserts that, in effect, Gladstone merely testified as a fact witness — she "repeat[ed] the symptoms that the [complainant] had described to her" and "did not opine on their cause[] [or] describe any symptoms of a child who had been sexually assaulted." Such testimony, the State argues, was "not offered to show that [the complainant] had signs of having been sexually abused," but instead was offered to rebut the defendant's theory that the complainant had fabricated the sexual assault so as to keep her job. The State explains, "If the [complainant] was merely worried about losing her job, she would not have been manifesting such symptoms three weeks later." Thus, the State argues, Gladstone's testimony — that three weeks after the assault, the complainant reported certain symptoms — did not violate Cressey, and defense counsel did not render ineffective assistance by failing to object to it.

We might agree with the State had the trial court not recognized Gladstone as an expert and not informed the jury that she could render an expert opinion. However, because the trial court recognized Gladstone as an expert and informed the jury that she could offer an expert opinion, even if she did not explicitly express an opinion that violates Cressey, the jury could have inferred that, in fact, she did so. Although Gladstone did not expressly opine that the complainant's symptoms were typical of those of child sexual abuse victims, she testified as to the complainant's reported "symptoms of significance," and the jury could have inferred from that testimony that she, as an expert in the care of abused and neglected children, found those symptoms significant to child sexual abuse. See id. at 405 (observing that the jury may attach extra importance to an expert's opinion simply because it is given with the air of authority that commonly accompanies an expert's testimony).

6

Accordingly, we are not persuaded by the State's argument that Gladstone's "testimony was not offered to suggest that [the complainant] had been abused." There is no discernible purpose for Gladstone to have been recognized as an expert other than to invite the jury to infer that she had formed the expert opinion that the defendant had assaulted the complainant. Defense counsel's failure to object to Gladstone's testimony on Cressey grounds cannot reasonably have been said to have been part of a trial strategy. See Collins, 166 N.H. at 212. Therefore, we conclude that trial counsel's performance was constitutionally deficient.

We turn now to the prejudice prong of the ineffective assistance of counsel claim to determine whether there is a reasonable probability that the result of the proceeding would have been different had competent legal representation been provided. Wilbur, 171 N.H. at 449. The State argues that, even if trial counsel's conduct fell "below the range of reasonable professional assistance" when he failed to object to Gladstone's testimony, there was no prejudice. The State asserts that Gladstone's testimony was merely cumulative of the testimony by the complainant's co-workers about the complainant's emotional state immediately following the alleged assault. The State contends that "Gladstone's testimony simply established that the [complainant] was still having an emotional reaction to the event." We disagree. Gladstone's testimony and the inferences that could be drawn from it — that she believed that the complainant had been sexually assaulted — were not cumulative of the other demeanor evidence because Gladstone, unlike the other trial witnesses, was recognized as an expert.

The State further argues that Gladstone's testimony did not affect the outcome of the case because "there was no link made between the symptoms the victim reported and sexual abuse." However, as in most sexual assault cases, the State's case largely turned on the jury's assessment of the complainant. Collins, 166 N.H. at 214. Here, as previously discussed, the jury could have inferred from Gladstone's testimony that such a link was made.

In light of our decision, we need not address the parties' arguments regarding whether defense counsel's decision not to file a pretrial notice regarding the introduction of evidence pertaining to the complainant's other sexual activity also constituted ineffective assistance of counsel. Because we determine that defense counsel's performance was ineffective under the State Constitution, we need not consider it under the Federal Constitution. See Ball, 124 N.H. at 231-33.

Affirmed.

LYNN, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

7