# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0668, <u>State of New Hampshire v. Kyle C. Buffum</u>, the court on October 19, 2021, issued the following order:**

Having considered the defendant's brief and reply brief, the State's memorandum of law, the oral arguments of the parties, and the appellate record before us, we conclude that a formal written opinion is unnecessary in this case. The defendant, Kyle C. Buffum, appeals the order of the Trial Court (<u>Nicolosi</u>, J.) denying his motion for a new trial. The motion before the trial court asked that his sentence be vacated and that he be resentenced in accordance with a pretrial plea offer extended by the State. He argues that the court erred in finding that, although he "did not receive the legal advice to which he was entitled" from his trial counsel, he failed to establish "a reasonable probability that he would have taken the plea offer but for his counsel's deficient advice." He asks that we remand this case to the trial court for resentencing in accord with the plea offer originally made by the State. He acknowledges that the plea offer addressed only one of three charges then pending against him and that the "record does not reflect that the State offered additional time to serve on the two other charges." Therefore, he asserts, the court "should remand for a determination of the proper remedy for those charges." We decline his request and affirm the order of the trial court.

The following facts are taken from the record before us. Between November 2013 and January 2014, the defendant solicited Samantha Heath to kill the victim; he explained to Heath how to do so and how to dispose of the victim's body. In January 2014, Heath attacked the victim. Heath subsequently pled guilty to attempted first degree murder and received a sentence of twenty years to life; she later testified at the defendant's trial.

The defendant was charged with accomplice to attempted murder, <u>see</u> RSA 626:8 (2016); RSA 629:1 (2016); RSA 630:1-a (2016), conspiracy to commit murder, <u>see</u> RSA 629:3 (2016); RSA 630:1-a, and criminal solicitation of murder, <u>see</u> RSA 629:2 (2016); RSA 630:1-a. Prior to trial, the State offered the defendant a plea deal of twenty years to life, the same plea deal that it had offered to Heath. The defendant rejected the offer and pled not guilty by reason of insanity. On January 15, 2016, the trial court held a status conference that was converted into a plea hearing. Prior to conducting the plea colloquy, the court recessed for an hour and a half during which time the defendant's trial counsel reviewed his acknowledgement and waiver of rights with him, and the defendant executed a

stipulation and an acknowledgement and waiver of rights form. The trial court then held a plea colloquy in which the "defendant indicated that he understood the elements of the underlying offenses and understood the rights that he was waiving by pleading not guilty by reason of insanity." During the colloquy, the court reviewed the maximum sentences that could be imposed for each of the three charged offenses. As the defendant states in his brief, he was incorrectly advised that, if convicted on the accomplice to attempted murder charge, he faced a possible sentence of thirty years to life in prison. In fact, the applicable sentencing statute, RSA 629:1, IV, establishes no minimum sentence; it provides "that in the case of attempt to commit murder the punishment shall be imprisonment for life or such other term as the court shall order."

Following a jury trial, the defendant was found guilty on all three charges. He was then sentenced to serve thirty-five years to life in prison on the attempted murder charge and given the option to petition the court to reduce his minimum sentence by seven years if he remained of good behavior in prison. He received suspended sentences of fifteen to thirty years on the criminal solicitation and conspiracy charges. These sentences were concurrent to each other but suspended for forty years; they were consecutive to the sentence imposed for his attempted murder conviction.

The defendant appealed his convictions; they were affirmed in 2017. In 2019, the defendant filed a motion for a new trial in which he alleged that his trial counsel's representation had been ineffective because counsel had failed to advise him about his maximum sentencing exposure. He argued that he would have accepted the State's plea offer of twenty years to life in prison "had he known that his exposure after trial was a life sentence instead of the 30 to life he was told." After holding a hearing at which she heard testimony and argument, the same trial judge who held the 2016 colloquy denied the motion. The defendant now appeals, arguing that the trial court erred in finding that he was not prejudiced by the misinformation that he received from his counsel.

The State and Federal Constitutions guarantee a criminal defendant reasonably competent assistance of counsel. State v. Wilbur, 171 N.H. 445, 448 (2018). The standard for determining whether a defendant has received ineffective assistance of counsel is the same under both constitutions. Id. Consistent with our long-recognized practice, we first examine the constitutional competency of counsel's performance under our State Constitution. See State v. Ball, 124 N.H. 226, 231-33 (1983). Because, in this case, the same analysis applies under the Federal Constitution, we will necessarily reach the same result under both constitutions. State v. Kepple, 155 N.H. 267, 269 (2007).

To obtain relief on a claim of ineffective assistance of counsel, a defendant must establish both that his counsel's representation was constitutionally deficient and that counsel's deficient performance prejudiced the outcome of the case. Id. at 269-70. The performance and prejudice prongs of the ineffectiveness

2

inquiry each present mixed questions of law and fact. Wilbur, 171 N.H. at 448. We will not disturb the trial court's factual findings unless they are unsupported by the evidence or are erroneous as a matter of law. Id. Our review of whether each prong is met is de novo. Id. If we conclude that the defendant has failed to satisfy either prong of the inquiry, we need not consider the other one. Kepple, 155 N.H. at 270.

There is no dispute in this case that the defendant's trial counsel erred in advising the defendant as to the sentence range applicable to a conviction for accomplice to attempted murder. See RSA 629:1, IV. However, the defendant argues that the trial court both misapprehended the scope of his trial counsel's deficient performance and erred in finding that he was not prejudiced by it.

We recently addressed the analysis to be applied to determine whether the prejudice prong has been met when a defendant alleges that the ineffective assistance of his counsel resulted in his rejection of a plea offer. Fitzgerald, 173 N.H. at 576-78. Because the analysis for an ineffective assistance claim is the same under both the State and Federal Constitutions, we adopted the approach developed by the United States Supreme Court in Lafler v. Cooper, 566 U.S. 156, 163-64 (2012). Fitzgerald, 173 N.H. at 576. A defendant can show prejudice if loss of a plea opportunity based on ineffective assistance of counsel leads to the imposition of a more severe sentence. Id. at 577. To establish prejudice, the defendant

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler v. Cooper, 566 U.S. at 164.

Here, the defendant contends that the combination of errors committed by his trial counsel led him to reject the State's plea offer of twenty years to life in prison. He identifies the following alleged errors: (1) his counsel's "assessment that he would likely get around twenty years after trial"; (2) his counsel's "failure to educate" him about the possibility of consecutive sentences; and (3) his counsel's misstatement about the sentence range applicable to a conviction for accomplice to attempted murder. We address each of the alleged errors in turn, beginning with his counsel's alleged assessment of the defendant's sentencing exposure.

3

We note that a mistaken prediction about a potential sentence does not, by itself, establish deficient performance. See United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996). A determination that counsel's mistaken prediction rises to the level of deficient performance requires the defendant to demonstrate that his counsel "did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him." Id. If the defendant cannot establish that an alleged mistaken prediction supports a finding of deficient performance, it cannot support his claim of prejudice. Id.

The record reflects that the trial court received conflicting testimony concerning defense counsel's assessment of the defendant's sentencing exposure. The defendant cites his own testimony that his trial counsel "made it seem like even if we lost at trial, that he could make [a] substantial argument that I could receive" a sentence close to what Heath received. His trial counsel testified that he advised the defendant that "given the enormity of what he was looking at" after the indictments were obtained, "he could be in for the rest of his life." Defense counsel also testified that he thought "that 35 or so was what [the defendant] might end up with" and that he told the defendant: "If you take the 20, I can save you maybe 15 years."

The trial court rejected the defendant's testimony and found that, after "looking at the combined sentences and the egregious nature of the case," defendant's trial counsel advised him that "he could be in prison for the rest of his life." See Walker v. Walker, 158 N.H. 602, 608 (2009) (recognizing that on appeal, considerable weight is given to trial court's judgment on credibility of witnesses). This finding is supported by the record. Accordingly, the defendant failed to prove his claim that his counsel performed deficiently by mistakenly advising him that he would likely receive a sentence of around twenty years after trial.

The defendant also asserts that his counsel's failure to educate him about the possibility of consecutive sentences supports a finding that he was prejudiced. The trial court found that

> at the January 15 plea hearing, defendant affirmed his knowledge that he was charged with three crimes, including solicitation and conspiracy, each of which carried a maximum sentence of fifteen to thirty years in prison and could be imposed consecutively to each other and to any sentence imposed on the attempted murder charge. Defendant signed an Acknowledgement and Waiver of Rights form indicating that he knew he faced three separate charges carrying individual sentences, making his overall exposure sixty years to life. . . . [His reluctance] to admit his understanding of the consecutive nature of these sentences [was] unconvincing.

4

The defendant contends that the trial court erroneously found that he was advised that "he could be given consecutive sentences at the plea hearing." See State v. Williams, 173 N.H. 540, 543 (2020) (interpretation of a trial court order presents a question of law, which we review de novo). We are unpersuaded by this argument. Given that the trial court had the transcript of the colloquy before it, we cannot conclude that the court was making a declarative statement that the defendant acknowledged the potential for consecutive sentences at that time. Rather, the trial court's order can be read as noting that the defendant affirmed his knowledge that he was charged with three offenses, including solicitation and conspiracy, which the order then explains carry maximum sentences and can be imposed consecutively. This interpretation is supported by the later reference in the same order that the defendant knew from the acknowledgement form that he faced three separate charges and by the trial court's conclusion that the defendant's reluctance to admit his knowledge of consecutive sentences was unconvincing. In light of the defendant's testimony that he understood what "consecutive" meant and that he knew that it was possible to "stack the charges," the record fully supports that he was not prejudiced by the alleged lack of input from his attorney.

The defendant also cites the misstatement made at the plea colloquy about the sentence range applicable to a conviction for accomplice to attempted murder to support his claim that, had he known that he could face a minimum sentence of life in prison on this charge, there was a "good possibility" that he would have accepted the State's offer. He likens his case to that of the defendant in Fitzgerald, 173 N.H. at 569-73, and argues that he too demonstrated a reasonable probability that, but for his counsel's deficient performance, he would have accepted the State's plea offer. This comparison, however, does not withstand scrutiny.

In Fitzgerald, the record demonstrated "that the defendant was seriously considering the State's plea offer at all times prior to trial." Fitzgerald, 173 N.H. at 577. In contrast, here, the defendant's trial counsel testified that the defendant "never wanted to take more than five [years]" as the sentence to be imposed if he pled guilty. Nevertheless, the defendant argued that had his trial counsel "properly advised him of his sentencing exposure on the attempted murder charge, there was a reasonable probability he would have accepted the State's plea offer" of twenty years to life in prison. The trial court found the defendant's assertion neither "credible" nor "convincing" and that he "remains steadfast in his belief that he is much less culpable than his co-defendant and that logically his sentence should not be more than [the sentence she received]." The court found: (1) that at the plea colloquy the defendant affirmed that he was aware that he was charged with three offenses, including solicitation and conspiracy; and (2) that he had signed an acknowledgement and waiver of rights form that indicated that he faced three sentences on three separate charges.

The trial court concluded that "Defendant's own testimony revealed that his decision was not based on misadvice, but rather resulted from his own intractable view of his case." Indeed, at the colloquy, the court had advised the defendant that if he prevailed at trial, the court would then hold a hearing on dangerousness. If he was found to be presently dangerous, he would be sentenced to a minimum of five years at the secure psychiatric unit at the State Prison; a hearing would be held every five years thereafter to determine whether he continued to be dangerous. In its order, the trial court found that the defendant's starting point in plea negotiations was a five-year minimum sentence and that, when he rejected the plea offer, he believed that "the worst case scenario" would be a sentence no greater than the twenty-years-to-life sentence imposed upon Heath, even though he "was well aware that his overall sentence could exceed collectively a thirty-year minimum." Given that, at the 2019 hearing on his motion, the defendant remained convinced that his culpability was less than that of Heath, the trial court concluded that the defendant

> would never have accepted that his exposure was anywhere near what he received as a sentence from [the] Court, let alone a life sentence, regardless of whether the particulars were clearly spelled out. In short, the Court was not convinced that the defendant was influenced at all by the erroneous advice.

These findings by the trial court are supported by the record. Given these facts, we conclude that the defendant has not met his burden of establishing a reasonable probability that but for the ineffective assistance of his counsel, he would have accepted the State's plea offer.

<u>Affirmed</u>.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**